UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Information No.: CR425-CR-102 |
| | ) | |
| V. | ) | 18 U.S.C. § 922(m) FALSE ENTRY |
| WILLIE PUSKAS, | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW, WILLIE PUSKAS, by and through his attorney of record, and files this, Defendant's Sentencing Memorandum requesting that this Honorable Court sentence the Defendant to 12 months supervised release. In support thereof, Defendant shows as follows.

BACKGROUND

1.

On February 4, 2025 Willie Puskas was indicted by a grand jury in the Southern District of Georgia for Manufacturing a Firearm without a License in violation of 18 U.S.C. §922(a)(1)(A). On February 24, 2025 Mr. Puskas appeared before Judge Christopher L. Ray for arraignment and entered a plea of not guilty.

Mr. Puskas entered into a plea agreement with the Government on September 2, 2025 wherein the Parties agreed that Mr. Puskas would enter a plea of guilty to False Entry, in violation of 18 U.S.C. § 922(m), a misdemeanor. The Government filed the above-referenced information in furtherance of that plea agreement on September 3, 2025. The Information contains a forfeiture allegation. Pursuant to the plea agreement, the defendant has agreed to forfeit the 35 firearms outlined in the Information and to never apply for a Federal Firearms License (FFL).

The guilty plea was formalized at a Rule 11 hearing on September 19, 2025. Mr. Puskas has fully accepted responsibility for his role in this offense. Mr. Puskas further limited his legal

rights in the plea agreement by waiving most of his appellate rights, and waiving most of his §2255 collateral attack rights.

2.

Background of Mr. Puskas' Firearms Business

Mr. Puskas previously owned and operated Puskas Firearm Innovations, LLC ("PFI") in Richmond Hill, Georgia. In that business Mr. Puskas provided typical FFL (Federal Firearms License) operations such as shipping, receiving and logging firearms purchased and sold by his customers. His business also provided typical gunsmithing services such as, i.e., repairing, modifying, embellishing, refurbishing, installing parts, or specialized finishing of functional frames or receivers.

Mr. Puskas's business was inspected by ATF in 2022 and it was determined that his A&D logbooks were not accurate. A&D (Acquisition and Disposition) logbooks are official records for tracking every gun bought (acquired) and sold (disposed of) for ATF compliance, detailing make, model, serial number, date, and buyer/seller info. At the time of the ATF inspection there were 2 suppressors that were not logged in properly and 287 other firearms that had not been not logged out properly. Although Mr. Puskas' shop processed over 19,000 legal transactions; the shop had failed to properly log these items. As the owner of PFI, Mr. Puskas accepts responsibility for this failure by not properly monitoring the logbooks and his employees who were responsible for entering, and in this case failing to enter, the proper logbook entries. ATF agents informed Mr. Puskas to make the necessary corrections to his logbooks. Mr. Puskas was not charged with any crime at this time.

The two suppressors were originally owned by the Darien Police department which disbanded in 2022. Darien Police were trying to find a way to dispose of their Class 3 NFA, including 2 suppressors. Transfer of Class 3 NFA requires an FFL with a Class 3 permit. Mr. Michael Deloach was friends with one of the Darien Police officers and he wanted the 2 suppressors. Mr. Deloach spoke to Mr. Puskas, who agreed to take possession of the suppressors

in order to secure them until the proper method of transferring these items could be determined. As Class 3 NFA, there are very specific rules on transfer of these items. In order to sell Class 3 NFA, an individual would normally give these items to a local Class 3 licensed FFL and fill out the appropriate paperwork. Once approved by ATF, the local FFL would then ship the Class 3 NFA item to a Class 3 licensed FFL where the buyer lives. The buyer would fill out the appropriate paperwork and take possession of the item.

In this case, one of the Darien police officers brought the suppressors to Mr. Puskas' shop in Richmond Hill at the direction of Mr. Deloach. Since Darien PD was not an induvial, and had since disbanded, it was unknown how to legally transfer these items to Mr. Deloach. Mr. Puskas did research and made multiple inquiries with his ATF point of contact in an effort to determine how these items could be legally transferred. He had not received definitive guidance by the time that ATF came to Mr. Puskas' shop for an inspection in 2022. ATF they told Mr. Puskas that he could not have the items because he did not have the necessary paperwork on them. ATF did not confiscate the suppressors at that time, but told him to return the items to their rightful owner, Darien PD. Mr. Puskas gave the suppressors to Mr. Deloach so he could give them back to his friend who had worked for Darien PD.

In 2023 undercover ATF agents made firearms purchases from PFI in order to determine if PFI was illegally manufacturing firearms by assembling the legally purchased firearm components. The undercover agent purchased a lower receiver from PFI. See Exhibit A (diagram of what is a firearm). The undercover agent then requested gunsmith work to finish the assembly. At that time Mr. Puskas did not believe that the assembly of finished components was included in the legal definition of "manufacturing." This disagreement as to what is assembly and what is manufacturing is at the heart of what led ATF to being their investigation into PFI. There is no formal definition of "manufacturing." Further, the guidance put out by ATF has changed several times over the years. See Exhibit B (ATF Ruling 2015-1). In particular, the ATF ruling in 2010 appeared to allow assembly of firearms by an FFL under certain circumstances.

> "ATF Ruling 2010-10 is based on two distinct but related premises. First, it recognizes that there are specific activities traditionally performed by gunsmiths, *i.e.*, repairing, modifying, embellishing, refurbishing, installing parts, or specialized finishing of functional frames or receivers. Such activities *do not* include, and the Ruling does not directly address the machining or other manufacturing processes required for the frame or receiver to be created or any steps to make it suitable for use in assembling a "weapon … which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Second, the Ruling recognizes that, by transferring the firearm *only* to another FFL involved in the manufacturing process, there is no "sale or distribution of the firearm manufactured" requiring a manufacturer's license."

In this situation, the customer would select and purchase a "lower receiver" which is what the ATF considers the firearm. PFI would acquire the "lower receiver" legally from the manufacturer. This item would be complete from the manufacturer and include a serial number. The customer would then select the other components that they wanted on their firearm. At that point Mr. Puskas concluded that the customer had purchased the firearm (the "lower receiver") and then PFI could then legally assemble the components as a gunsmithing shop.

Mr. Puskas' point of view was that assembling a firearm from various components, without more, should not constitute manufacturing. In fact, any individual could purchase these items themselves and put them together, if they had some basic tools and knowledge.

When the ATF issued Ruling 2015-1, they made it clear that this type of assembly by the FFL was considered manufacturing from their point of view. Mr. Puskas' was not aware of that change in policy and is the primary reason he ran afoul of ATF in this case.

There is, necessarily, a political component to how the ATF operates and how they interpret federal law and policy. As of 2025, the ATF has significantly changed how they deal with FFLs,

particularly as to enforcement policy.[1] One of the 2025 stated goals is to "Ensuring that all rules fairly implement congressional statutes rather than create entirely new laws by administrative order." Id.

Specific Guidelines Application Objections

3.

Mr. Puskas objected to the enhancement for sophisticated means IAW U.S.S.G. §3B1.3.

§3B1.3. ABUSE OF POSITION OF TRUST OR USE OF SPECIAL SKILL

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

Mr. Puskas needed no special skill to incorrectly make his FFL logbook entries. Certainly nothing that "significantly facilitated the commission or concealment of the offense." The offense in this case that Mr. Puskas failed to keep his FFL logbook properly. At the time of the ATF inspection there were 2 suppressors that were not logged in properly and 287 other firearms that had not been not logged out properly. The suppressors are a unique situation and are discussed above. His shop processed over 19,000 legal transactions; it appears that he failed to properly log 287 of them. Almost all of these were fixed after the initial ATF inspection. He has pleaded guilty to false entry in his logbooks, not the other crimes listed in his paragraph.

APPLICATION OF U.S.S.C. §3353(A) FACTORS

6.

[1] See https://www.atf.gov/rules-and-regulations/atf-launches-new-era-reform.

In determining what sentence is sufficient but not greater than necessary to comply with the § 3553(a)(2) purposes of sentencing, a court must consider several factors listed in § 3553(a). Those factors are (1) “the nature and circumstances of the offense and the history and characteristics of the defendant;” (2) “the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;” (3) “the kinds of sentences available;” (4) the sentencing guidelines range as established by the U.S. Sentencing Commission; (5) any policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution where applicable.

1. Nature and Circumstances of the Offense. The offense of conviction, False Entry, is a record-keeping offense. It is noteworthy that when Mr. Puskas was inspected in 2022 and the logbooks were found to be deficient, ATF agents took no punitive action. They simply instructed Mr. Puskas to fix his record-keeping. Although there were two suppressors found inside Mr. Puskas’ shop, they were not confiscated. ATF directed Mr. Puskas to return the items to their original owner.

1.(a) The History and Characteristics of the Defendant. Mr. Puskas is a 42 year old married father of two daughters. His criminal history is minor and primarily related to offenses related to alcohol use and driving. Mr. Puskas is an entrepreneur and has consistently shown the ability to work and be a productive member of society for his entire adult life. Mr. Puskas has no history of violent behavior.

Mr. Puskas is a loving father to two daughters. He is an important part of their lives as evidenced by the letter of support written by his wife, Raquel along with the photos submitted for the Courts review. See Exhibit C – Letters of Support, and Exhibit D – Family Photos.

As a gunsmith and business owner Mr. Puskas is well respected in the local community. The attached letters are from friends, family and even law enforcement. See Exhibit C – Letters of support. Mr. Puskas has also been active in the local community. He, along with other local members of the community, worked to start the Richmond Hill High School skeet shooting team.

Mr. Puskas is an American Patriot. Although Mr. Puskas never served in the armed forces, his patriotism for the United States is evident. See Exhibit E – Certificates and Awards.

2. The need for the sentence imposed to —(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. A significant part of the plea agreement for Mr. Puskas is that he has agreed to never apply for an FFL in the future. Therefore, Mr. Puskas will never again be able to commit misconduct related to the record-keeping and sales of firearms. Mr. Puskas' livelihood for the last 12-15 years has been firearms. He is well known in the local community to be an excellent gunsmith. That is a real part of the sentence for Mr. Puskas and provides adequate deterrent for other FFLs to adhere to proper record-keeping requirements. Denying Mr. Puskas the ability to be employed in a firearms-related job is, and has been, financially untenable for the Puskas family. Mr. Puskas shop was shut down by ATF in November of 2023, significantly limiting his ability to financially support his family. Mr. Puskas further has been unable to possess any firearms since February 2025 as a condition of his bond. This has also significantly limited his ability to financially support his family. Mr. Puskas asks, therefore, to be able to be employed in the firearms industry while he is on supervised release.

3. The Kinds of Sentences Available. This is not a case that demands incarceration. Mr. Puskas has been fully compliant with the terms of his pre-trial supervision. Twelve months supervised release would be appropriate considering the factors in 18 U.S.C. 3553(a).

a. Fine. The Defendant does not appear to have the ability to pay a fine within the guideline range, however, the forfeiture of the 35 listed firearms should be considered. The approximate value of those firearms is $35k-$40k dollars.

4. The Sentencing Guideline Range. The advisory sentencing guideline range as determined by U.S. Probation prior to objection is 78-97 months incarceration. As a misdemeanor plea, the maximum incarceration is 12 months. However, the fact that the applicable sentencing guideline is based on felony statutes of conviction which apply to much more serious misconduct should be considered.

5. Sentencing Commission Policy Statements. As discussed above regarding the guidelines objections made in this case.

6. The Need to Avoid Unwarranted Sentencing Disparity. Not applicable to this case.

7. Restitution. Not applicable to this case.

CONCLUSION AND SENTENCING REQUESTS

8.

Mr. Puskas appears before this Court having taken responsibility for his actions and he understands that he will never again be able to hold a Federal Firearms License. That is a real punishment. He has been fully compliant with the conditions of his pre-trial release. This is not a case that demands incarceration.

Therefore, Mr. Puskas respectfully requests that he be sentenced as follows:

1. That the Defendant be sentenced to 12 months of supervised release.
2. If incarceration is ordered the Defendant requests 30 days to self-surrender and to be assigned to Jesup FCI; and
3. That the Defendant be evaluated for enrollment in the Regional Drug Abuse Program (RDAP) for his prior alcohol-related issues.

This 9th day of December, 2025.

Respectfully submitted,

BALBO & GREGG, ATTORNEYS AT LAW, PC

By: /S/ Chester J. Gregg
Chester J. Gregg, Esq.
Georgia Bar No.925687

438 W. General Screven Way, Ste A
Hinesville, Georgia 31313
(912) 876-6666 Telephone
chet@balbogregg.com

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case, as required in a restricted filing, in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 9th day of December, 2025.

Respectfully submitted,
BALBO & GREGG, ATTORNEYS AT LAW, PC

By: _/S/_Chester J. Gregg________
Chester J. Gregg, Esq.
Georgia Bar No.925687

438 W. General Screven Way, Ste A
Hinesville, Georgia 31313
(912) 876-6666 Telephone
chet@balbogregg.com